# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.    CIV No. 98-1359 JP/LFG

PAUL K. BYERS,

    Defendant,

and CANONCITO BAND OF NAVAJO INDIANS,

    Intervenor-Defendant..

**PLAINTIFF'S PROPOSED FINDING OF FACTS/CONCLUSIONS OF LAW**

The plaintiff United States of America, by and through its undersigned attorneys, proposes the following Findings of Fact and Conclusions of Law in this matter:

## PROPOSED FINDINGS OF FACT

1. This is an action by the United States of America to enjoin the unlawful inclosure of public lands and interference with access to public lands by Defendant, Paul Byers ("Byers"), and for trespass.

2. Byers is a resident of the State of New Mexico within the jurisdiction of this Court.

3. The United States of America is the owner of the following described public lands among other lands in Sandoval County, New Mexico (hereinafter called "the Public Lands"):

    N1/2N1/2, W1/2SW1/4, SE1/4SW1/4 of Section 20, T. 15 N., R. 3 W., N.M.P.M.

    Section 19, T. 15 N., R. 3 W., N.M.P.M.



Section 25, T. 15 N., R. 4 W., N.M.P.M.

N1/2N1/2 of Section 36, T. 15 N., R. 4 W., N.M.P.M.

4. Byers is the owner or occupant of the following described private lands within Sandoval County, New Mexico (hereinafter called "the Private Lands"):

S1/2N1/2, N1/2SE1/4, SW1/4SE1/4, NE1/4SW1/4 of Section 20, T. 15 N., R. 3 W., N.M.P.M.

NE1/4 of Section 30, T. 15 N., R. 3 W., N.M.P.M.

5. The Private Lands in Section 20 were patented to Juan Jose Griego in 1885 and 1922. The Private Lands in Section 30 were patented to the Romeros in 1913. Members of Byers' family acquired the Private Lands in Section 20 in 1977 by real estate contract from Cristino and Rafaelita Griego, and the Private Lands in Section 30 by deed from Rudy Romero in 1986. Byers presently owns or controls all of the Private Lands.

6. Byers has erected, maintained or controlled on public lands fences, signs and intermittently locked gates, including a gate in Section 20, T. 15 N., R. 3 W., N.M.P.M. which is totally within the Public Lands.

7. Byers has erected, maintained or controlled on the public lands fences, signs and intermittently locked gates which have prevented or obstructed free passage to or transit over or through the Public Lands, including a gate in Section 20, T. 15 N., R. 3 W., N.M.P.M. which is totally within public lands.

8. The road in question on essentially the same alignment has been in existence and use since 1874. The adjacent lands have been fenced for livestock purposes since at least 1942.

9. Prior to the Byers' acquisition of the Private Lands in 1977 and 1986, the BLM and its permittees, as well as the public at large, had used the road in question to access public and private lands beyond what is now Byers' Private Lands without interference from and with the actual or imputed knowledge of the Byers' predecessors in title for a period well in excess of ten years

10. Use of the road prior to the Byers' acquisition of the Private Lands in 1977 and 1986, was open, uninterrupted, peaceable, and notorious, and was with the actual or imputed knowledge of the owners.

11. The road in question has appeared on BLM maps as a BLM maintained road. The road was intermittently maintained by the County of Sandoval which still considers the road to be a public road.

12. That open, uninterrupted, peaceable and notorious use of the road in question continued after the Byers' family acquired the Private Lands until the late 1980s when Byers began to lock the gate in Section 20, T. 15 N., R. 3 W., N.M.P.M. which is totally within public lands.

13. No other locked gate has ever been placed by Byers on the Private Lands to prevent use of the road in question.

14. BLM never gave Byers permission to lock the gate in Section 20, T. 15 N., R. 3 W., N.M.P.M. which is totally within public lands, and has not abandoned its right to the use the road. The BLM has had numerous discussions with Byers since the late1980s about keeping the gate unlocked and has on occasion cut the unauthorized locks on the gate in Section 20, T. 15 N., R. 3 W., N.M.P.M. which is totally within public lands.

3

15. Use of the road across the Private Lands, while owned by Byers or his predecessors, has not been shown to be permissive.

## PROPOSED CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1345 and 43 U.S.C. § 1062. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

2. Byers' conduct described above is intentional and contrary to law. The actions of Byers are an unlawful inclosure of the Public Lands under 43 U.S.C. § 1061. Camfield v. United States, 167 U.S. 518 (1897).

3. Byers' actions are an unlawful obstruction of free passage or transit over or through the Public Lands under 43 U.S.C. § 1063, and should be enjoined. McKelvey v. United States, 260 U.S. 353 (1922); Stoddard v. United States, 214 F. 566 (1914).

4. Unauthorized entry on the lands of another constitutes a trespass under New Mexico law. North v. Public Service Co., 94 N.M. 246, 608 P.2d 1128 (1980). Likewise, one who, without right, asserts dominion over public lands of the United States is a trespasser. United States v. Osterlund, 505 F.Supp. 165 (D. Colo. 1981), aff'd, 671 F.2d 1267 (10th Cir. 1982).

5. The United States and its agencies like any private person has the right of an ordinary proprietor, to maintain its possession and to prosecute trespassers. Kleppe v. New Mexico, 426 U.S. 529 (1976); Utah Power & Light Co. v. United States, 243 U.S. 389 (1917); Camfield v. United States, 167 U.S. 518 (1897).

6. Byers' locking of the gate, which is located totally within public lands, is a trespass on public lands and should be enjoined.

7. The United States and its agencies like any private person can acquire prescriptive rights across private lands. Stanley v. Schwalby, 147 U.S. 508 (1893); United States v. Stubbs, 776 F.2d 1472 (10th Cir. 1985); United States on behalf of Zuni Tribe v. Platt, 730 F.Supp. 318 (D. Az. 1990).

8. Under New Mexico law, a private person can acquire a prescriptive easement by use that is "open, uninterrupted, peaceable, notorious, adverse, under a claim of right ....for a period of ten years with the knowledge or imputed knowledge of the owner." Hester v. Sawyers, 41 N.M. 497, 504, 71 P.2d 646, 651 (1937). In the absence of proof of express permission, use is presumed to be adverse under a claim of right. Village of Capitan v. Kaywood, 96 N.M. 524, 632 P.2d 1162 (1981).

8. Under the doctrine of collateral estoppel, Byers is bound by the findings of facts and determinations of law in prior litigation (Silverstein v. Byers, 114 N.M. 745, 845 P. 2d 839 (Ct.App. 1992)) to which he was a party with other neighbors involving the same or similar issues concerning use of the same road. Klein v. Commissioner of Internal Revenue, 880 F.2d 260 (10th Cir. 1989).

9. BLM and its permittees had acquired a prescriptive easement across the Private Lands prior to the Byers' acquisition of the Private Lands. Silverstein v. Byers, 114 N.M. 745, 845 P. 2d 839 (Ct.App. 1992).

10. Under New Mexico law, subject to the same requirements for a private prescriptive right, "a public right of way by prescription may be established by usage by the general public continued for the length of time necessary to create a right of prescription if the use had been by an individual....." Village of Capitan v. Kaywood, 96 N.M. 524, 525, 632 P.2d 1162, 1163 (1981); Trigg v. Allemand, 95 N.M. 128, 619

5

P.2d 573 (1980). Frequency of use or the number of users is not controlling as long as use of the road was "free and common to all who had occasion to sue it as a public highway." Trigg v. Allemand, 95 N.M. at 132, 619 P.2d at 577 (citation omitted).

11. The public at large had acquired a public, prescriptive right of way across the Private Lands prior to the Byers' acquisition of the Private Lands. Ibid.

12. R.S. 2477 constitutes a general offer by the United States to dedicate unreserved public lands for the construction of public roads. Lovelace v. Hightower, 50 N.M. 50, 168 P.2d 864 (1946). The public through use alone may accept the offer subject to superior rights or disposition of the lands. Frank A. Hubbell Co. v. Gutierrez, 37 N.M. 309, 22 P.2d 225 (1933).

13. The public has accepted through continuing use since 1874 the grant of right of way contained in R.S. 2477 prior to the Byers' or their predecessors acquisition of title to the Private Lands. Lovelace v. Hightower, 50 N.M. 50, 168 P.2d 864 (1946). Since the use occurred prior to the patenting of the Private Lands, the patentees took subject to the public right of way for the road. Wilson v. Williams, 43 N.M. 173, 87 P.2d 683 (1939).

14. The general public has a right of way under R.S. 2477 across the Private Lands over and upon the same road following the easement sought by BLM.

15. Acquisition by members of the Byers family of the Private lands in Section 20 in 1977 and in Section 30 in 1986 was subject to any existing rights of way and easements, and whatever rights Byers has as owner or controller of the Private Lands is still subject to those rights of way and easements. Trigg v. Allemand, 95 N.M. at 134, 619 P.2d at 579.

16. Under New Mexico law, abandonment of an easement requires proof of intent to abandon and where acts are relied as proof, the evidence must unequivocally indicate such an intention. Posey v. Dove, 57 N.M. 200, 257 P.2d 541 (1953).

17. Byers has failed to establish that BLM, its permittees or the public has abandoned the right of way across the Private Lands.

18. Byers should be enjoined from any interference with the right of BLM, it permittees, and the public at large to use the road across the Private Lands.

Respectfully,

NORMAN C. BAY
United States Attorney

JOHN W. ZAVITZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
*Attorney for Plaintiffs*

I HEREBY CERTIFY that a true
copy of the foregoing pleading
was mailed to opposing counsel and
Mr. Byers on February 4th, 2001.

John W. Zavitz
Assistant U.S. Attorney

7